THE CITY OF ST. LOUIS v. FLYNN *et al.*, *Appellants*.

Division Two, May 21, 1895.

1. **Nuisance**: NOTICE: ST. LOUIS CITY CHARTER. The charter and ordinances of the city of St. Louis provide that notices in relation to nuisances shall be served on the owner or agent having charge of the property on which a nuisance is charged to be maintained "in the same manner as writs of summons are required to be served in civil cases." *Held* that a service on one of two members of a firm is not notice to the other.

2. ——: ——: CONSTRUCTIVE SERVICE. Where the statute provides for constructive service of process, the statutory requirements must be observed; two defendants can not be so served by leaving only one copy for both with a member of their family at their usual place of abode. (*Stewart v. Stringer*, 41 Mo. 400, *followed.*)

*Appeal from St. Louis Court of Criminal Correction.*
HON. J. R. CLAIBORNE, Judge.

REVERSED.

*Louis A. Steber* for appellant.

(1) To "fail and refuse to comply with an order of the health commissioners" or board of health, is not of itself, and can not be made, an offense. *Hutton v. Camden*, 39 N. J. L. 122; *Bates v. District*, 8 D. C. 433; *Mayor v. Board of Health*, 31 How. Pr. 385; *Howard v. Robbins*, 1 Lans. (N. Y.) 63. (2) "It is certain that towns may not in their corporate capacity proceed by adversary methods before their own trustees to adjudge a particular property or structure a nuisance, and by order against the owner secure its abatement. *American Furniture Co. v. Batesville*, 35 N. E. Rep. (Ind.) 682. (3) A man can not be made a criminal through the acts of others over whom he has no control. Authorities *supra; In re Jacobs*, 98 N. Y.

98; *Everett v. Marquette*, 53 Mich. 450. (4) The board of health, in the absence of a law or ordinance on the subject, has no power to declare what shall constitute a nuisance. A law can only emanate from the legislative will. Blackstone's Comm., *pp. 53–55; 1 Kent's Comm., *p. 447; Cooley's Const. Lim. [6 Ed.], p. 137, note 1; *Mayor v. Board*, 31 How. Pr. 385; *Schuster v. Board of Health*, 49 Barb. 450; *New Orleans v. Blineau*, 3 La. Ann. 689; *Tugman v. Chicago*, 78 Ill. 405. (5) The legislature itself can not, constitutionally, declare a given use of a particular property as harmful and a nuisance. This would be exercising a judicial function. *Quintini v. Bay St. Louis*, 64 Miss. 483; Tiedeman on Lim. Pol. Pow., sec. 122a, p. 426; Wood on Nuis. [3 Ed.], sec. 744, at p. 976; *Evansville v. State, etc.*, 118 Ind. 426; *Coe v. Schultz*, 47 Barb. 64. (6) The abatement of a nuisance must not exceed its necessity. *Babcock v. Buffalo*, 56 N. Y. 268; *Welch v. Stowell*, 2 Doug. (Mich.) 332; *Rogers v. Barker*, 31 Barb. 449; *Robert v. Rose*, L. R. 1 Exch. 81; *Veazie v. Dwinel*, 50 Me., at p. 496; *Ruff v. Philips*, 50 Ga. 130; *Green v. Lake*, 54 Miss. 541. (7) The "red" notice being an order to appear before the board of health is directed to Thomas Flynn and Christian Winter. Thomas Flynn is served and Christian Winter is not. This does not bind Winter. *Demoss v. Brewster*, 4 Smed. & M. 661; *Pittman v. Bank*, 1 How. (Miss.) 527; Murfree on Sheriffs, sec. 849; *Morgan v. Richardson*, 16 Mo. 409; *Fairbanks v. Kraft*, 43 Mo. App. 121. (8) A return of service on "a member of his family over the age of fifteen years," without naming or describing such "member" is void for uncertainty. *Montgomery v. Brown*, 7 Ill. 584; *Townsend v. Griggs*, 3 Ill. 366; *Boyland v. Boyland*, 18 Ill. 552; *Tavenor v. Reed*, 10 Iowa, 416; *Converse v. Warren*, 4 Iowa, 170; *Davis v. Burt*, 7 Iowa, 58; *Pilkey v. Glea-*

*son,* 1 Iowa, 86; *Gilbreath v. Kuykendall,* 1 Ark. 50; *Dawson v. Bank,* 3 Ark. 505; *Parks v. Weems,* 9 Ark. 439; also cas. cit. vol. 11, U. S. Dig. (1st Series) p. 256, sec. 1012.

*W. C. Marshall* for respondent.

(1) There can be no doubt of the power of the legislature, or of the municipalities deriving their power from the legislature, to make police regulations designed to promote the health and morals of the community. *St. Louis v. Pitts,* 53 Mo. 582; *St. Louis v. DeBar,* 58 Mo. 395. (2) It is competent to authorize or to delegate the police power of the city. It can authorize the removal of a nuisance by a summary proceeding without a trial by jury. *Kincaid's Appeal,* 66 Pa. St. 411; *Campbell v. Kansas City,* 102 Mo. 344; *Butchers' Union Co. v. Crescent City Co.,* 111 U. S. 746; *Fertilizing Co. v. Hyde Park,* 97 U. S. 659; *Wate v. Fisher,* 52 Mo. 177. (3) And anything which is offensive to sight, smell or hearing, erected or carried on in a public place where people dwell or pass, have the right to pass, to their annoyance, or anything that renders the inhabitancy or enjoyment of one's premises uncomfortable is a nuisance. *Hackey v. State,* 8 Ind. 494; *State v. Ball,* 59 Mo. 321; *Smith v. McCorrathy,* 11 Mo. 518; *Welton v. Martin,* 7 Mo. 307; *King v. White,* 1 Burr. 333; *Attorney-General v. Everett Booming Co.,* 34 Mich. 462. (4) There is no merit in the contention that the summons is void because it was served on a member of the family of the defendants, without specifying which member. *Bank v. Altheimer,* 91 Mo. 190. (5) Section 6 of article 12 of the charter provides that the "notice shall be served upon the owner or agent having charge of said property, in the same manner as writs of summons are required to be

served in civil cases." Such a service is good in a civil case. Par. 3, sec. 2017, R. S. 1889. (6) The board of health acted only in a *quasi*-judicial manner, and its judgment of condemnation was, *prima facie*, conclusive. The question of fact of whether defendant's premises were in fact a nuisance having been submitted to and determined by the court, there is no room for complaint on the part of the defendant. 22 Am. and Eng. Encyclopedia of Law, 134; *Odowr v. Causey*, 59 Ga. 608.

GANTT, P. J.—This proceeding was commenced in the second district police court of the city of St. Louis to collect a fine from the defendants for the violation of a city ordinance of said city, number 14000, secs. 418, 429, 434, 441, 442, 443 and 444, approved April 12, 1887. The complaint is, substantially, as follows:

"CITY OF ST. LOUIS, Mo., Sept. 22, 1891.

"Thomas Flynn and Christian Winter, composing the firm of Flynn & Winter, to the city of St. Louis, Dr., to five hundred dollars for the violation of an ordinance of said city, entitled 'An ordinance in revision of the ordinances of the city of St. Louis, and to establish new ordinance provisions, for the government of said city,' being ordinance number 14,000, chapter 14, article 10, sections 418, 429, 434, 441, 442, 443, 444. Approved April 12, 1887, in this, to wit:

"In the city of St. Louis and state of Missouri on the twenty-second day of September, 1891, and on divers other days and times prior thereto, the said Thomas Flynn and Christian Winter, composing the firm of Flynn & Winter, the defendants, being the owners, managers, agents, lessees, tenants and occupants of premises number 5341 Hall street, city block number 3406, in the city of St. Louis, and state of Missouri, on the twenty-second day of September, A.

D. 1891, and at divers times prior to that time, *failed and refused to comply with an order of the health commissioner in and for the city of St. Louis, which said order was issued against, and legally served upon, said defendants on the tenth day of September, A. D. 1891, commanding the said defendants, within ten days from the service thereof, to remove, abate or discontinue a certain nuisance, then and there existing in and upon said premises*, to wit: the filthy rendering establishment and filthy drain on public and private property, by discontinuing the said filthy drain on public and private property, and by discontinuing the discharge of noxious vapors from the building, and by thoroughly cleaning said premises inside and outside, and said defendants did then and there fail and neglect within the time specified in said notice, and have up to this twenty-second day of September, 1891, failed and refused to show good cause to said board of health and said health commissioner, why they, *the said defendants, aforesaid, could not, or ought not, to comply with the said order;* said filthy rendering establishment and said filthy drain so owned, managed and conducted by Thomas Flynn and Christian Winter, defendants, as aforesaid, and situated on the property as aforesaid, having been declared officially and of record by said board of health to be a nuisance and detrimental to the public health.''

Along with the complaint there were filed a ''red notice'' and a ''white notice,'' the former dated August 13, 1891, being in the nature of a citation to defendants to show cause before the board of health on the twenty-seventh of August, 1891, and the latter was a notice that the board of health on August 27, 1891, had declared their establishment a nuisance. The return on the ''red notice'' was as follows:

''Executed this notice, in the city of St. Louis, this seventeenth day of August, 1891, at the hour of

5:55 o'clock P. M., by delivering a true copy of the same to Thomas Flynn, a member of the firm of Flynn and Winter.           "EMIL THOMAS, Marshal,

"By C. H. Adams, Deputy."

And that on the "white notice" in these words:

"Executed this notice in the city of St. Louis this tenth day of September, 1891, at the hour of 4 o'clock P. M., by delivering a true copy of the same at the usual place of abode of the within named defendants Thomas Flynn and Christian Winter *with a member of their family over the age of fifteen years.*

"EMILE THOMAS, Marshal,

"By G. Hoffman, Deputy Marshal."

The defendants duly appeared in the police court, a trial was had, and on November 21, 1891, defendants were fined $100, and on the same day appealed to the court of criminal correction of the city of St. Louis, and filed their bond. On reaching the court of criminal correction, the defendants demurred on eleven different grounds, their demurrer was overruled, and on March 30, 1892, the cause was tried before the court on its merits.

The assignments of error are nineteen in number, covering a discussion of the law of nuisances *in extenso,* and raising a number of constitutional propositions.

I. It is not contended by the city counselor that the defendants' business is a nuisance *per se,* and it will, therefore, not be profitable to review the cases defining what is, and what is not, such a nuisance.

While the complaint charges in general words a violation of seven distinct sections of chapter 14, article 10, of the revised ordinances, it is obvious from its reading that the only sections whose violation is charged with any regard to the rules of pleading are sections 418 and 419 of said chapter and article and the offense therein denounced.

Section 6 of article 12 of the scheme and charter of St. Louis provides that in order to effect the abatement of nuisances, or the removal of accumulated filth, the health commissioner shall have power, whenever, in his opinion, such nuisances or filth exist, and *after officially so declared of record by the board of health,* to notify the owner or agents thereof, or his or their agents, to abate or remove the same, and if the owner fails so to do, within the time indicated in such notice, which time is made discretionary with the health commissioner, such owner shall be deemed guilty of a misdemeanor, and, on conviction, shall be liable to a fine not exceeding five hundred dollars. Under this provision in the charter, and sections 418 and 419, *supra,* this proceeding must be sustained if at all. The reference to the other sections may be, and will be, treated as surplusage.

The complaint, then, is that the firm of Flynn & Winter were guilty of violating the city ordinance in that they failed to obey an order, of date September 10, 1891, from the health commissioner to abate a nuisance, and have failed to show cause, up to September 22, 1891, to the board of health, why they should not obey said order. The reference to the character of the nuisance in the complaint is merely incidental to the charge of disobeying the order of those functionaries which constitutes the *gravamen* of the complaint.

The charter and the ordinance both require that notice shall be served upon the owner or agent having charge of the property on which it is claimed a nuisance is maintained, *"in the same manner as writs of summons are required to be served in civil cases."* The service of the first or "red notice" was upon Thomas Flynn alone. Winter was not served and hence he could not have had his day before the board of health

to show cause against condemning the rendering establishment of his firm.

It is argued by counsel for the city that the service of notice on Flynn alone was sufficient, citing as analogous that the notice to one member of a firm of the dishonor of a note or bill of exchange is sufficient. But the language of the charter requires that the notice shall be served as writs of summons are. Both parties are sued in this proceeding which, though civil, under our decisions, is yet *quasi* criminal in its consequences, subjecting the defendant to a heavy fine, and, before either member of the firm can be punished by fine, he must be served as the statute requires. It is very plain that Winter was in no default when the board of health took jurisdiction of the matter. No attempt was made to notify him of any violation of the ordinance, and, as, without notice, the board of health in this class of cases had no power to condemn his establishment as a nuisance, it must follow that its attempt to do so on August 27 was void and of no effect, as to him, and the city by its own proof showed he was not guilty of violating any order either of the health commissioner or board of health as charged.

It is very clear that the court of criminal correction erred in rendering judgment against defendant Winter independent of all other questions.

II. The red notice to Flynn recited that on August 13, 1891, a report was made to the board of health that this firm was conducting its business so as to create a nuisance and he was notified to show cause August 27, 1891, why said nuisance should not be abated. This notice was legally served, but Flynn did not appear, and the board of health, it appears, attempted to act in his absence, as appears by the following record of the board read in evidence by the clerk of the board:

"Office of the board of health, Thursday, August 27, 1891. A regular meeting of the board was held to day. Health Commissioner Dudley in the chair. Present: Maj. Caruth and Dr. Forster. Absent: Dr. Robinson, Maj. Walbridge, and his Honor Mayor Noonan.

"The minutes of the previous meeting were read and approved. After evidence produced and testimony heard, the board, on motion, condemned the following cases as nuisances and detrimental to public health. You are conducting a business in such a manner as to create a nuisance, viz.: by having a rendering establishment from which is discharged filthy drainage on public and private property, also from foul odors emanating from the building, and by the general filthy condition of the premises inside and outside. 5341 Hall Street, Flynn & Winter, owners." The clerk testified "I have no other record of the board of health appertaining to this matter. Flynn & Winter did not appear before the board of health and show cause why the nuisance should not be abated."

Thereupon the board issued the following notice:

(The "white" notice.)

"OFFICE OF THE HEALTH COMMISSIONER,

"ST. LOUIS, September 3, 1891.

"*To Thomas Flynn, Christian Winter, comprising the firm of Flynn & Winter, owner, 507 Talcott Avenue:*

"Take notice that a meeting of the board of health for the city of St. Louis, held on the twenty-seventh day of August, 1891, after a hearing, the filthy rendering establishment and drain situated 5341 Hall street was declared officially and of record by said board of health to be a nuisance and detrimental to the public health.

"Therefore, by virtue of the authority vested in me by charter and ordinances of the city of St. Louis, I

hereby notify you to remove, abate, or discontinue the same, by discontinuing the filthy drain on public and private property, and discontinue the discharge of noxious vapors from the building, and by thoroughly cleaning the premises inside and outside within (10) ten days from service of this notice. Any failure on your part to comply with said order or this notice will subject you to a prosecution and a fine not exceeding five hundred dollars, and such nuisance may be removed by my orders, and the cost thereof assessed as a special tax against the property on which it is situated, in accordance with the charter and ordinances of the city of St. Louis.          "G. F. DUDLEY,
"Attest:                    "Health Commissioner.
      "SEWARD A. FINNEY, M. D.,
      "Clerk of the Health Commissioner and Board of Health."

The service of this notice was as follows:

"Executed this notice in the city of St, Louis this tenth day of September, 1891, at the hour of 4 o'clock P. M., by delivering a copy of same at the usual place of abode of the within named defendants Thomas Flynn and Christian Winter *with a member* of their family over the age of fifteen years.

                    "EMILE THOMAS, Marshal.
"By G. HOFFMAN, Deputy Marshal."

Now the charter provision is clear that the health commissioner only has power to notify the owner to abate the nuisance "whenever in his opinion such nuisance or filth exists *and after officially so declared of record* by the board of health." As already said, the offense here charged is failing to obey an order to abate *after their establishment was officially declared a nuisance."* The only notice issued in this case *after* the board of health attempted to declare Flynn's establishment a nuisance, was the white notice above set out,

but the service of that notice was not according to the statute *and in law was no notice at all.* The service was constructive only and to be binding must conform, at least substantially, to the statute. This service was held void in *Stewart v. Stringer*, 41 Mo. 400, and similar rulings have been made in *Brown v. Langlois*, 70 Mo. 226; *Bank v. Suman*, 79 Mo. 530; *Laney v. Garbee*, 105 Mo. 355.

As the only offense charged against Flynn was a failure to obey the order of which he had no notice, as appears by the city's own showing, the motions to dismiss ought to have been sustained, or a verdict and finding made for defendants upon the whole evidence. This conclusion obviates an inquiry into the various constitutional questions mooted in the briefs. The judgment is accordingly reversed. BURGESS and SHERWOOD, JJ., concur.